E-FILED
Friday, 24 April, 2026  01:08:50 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JEFFREY LEONHARDT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-04010-SLD-RLH |
| | ) | |
| MENARD, INC., d/b/a MENARDS STORE | ) | |
| NO. 3285, A FOREIGN CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

In this slip-and-fall case, Plaintiff Jeffrey Leonhardt seeks compensation for injuries caused by a fall on the premises of Defendant Menard, Inc., d/b/a Menards Store No. 3285 ("Menards").  He seeks to recover on grounds that Menards negligently designed, constructed, and maintained the store property such that the premises presented an unreasonable risk of harm to store patrons.  Before the Court is Menards's motion for summary judgment, ECF No. 20, and Leonhardt's motion to strike Exhibit 9 to Menards's motion for summary judgment, ECF No. 28. Because Menards did not have a duty to protect Leonhardt from the store condition at issue, Menards's motion for summary judgment is GRANTED.  As this order does not rely on Exhibit 9, Leonhardt's motion to strike is MOOT.

1

## BACKGROUND[1]

On September 15, 2021, Leonhardt and his son visited the Menards store in Moline, Illinois, to return approximately ten sheets of 3/4 inch particleboard. Menards has been doing business at its store in Moline since the store opened in 2012. Design of the building began in November 2001, when the Menard, Inc. Planning and Development Department crafted the blueprints for the Moline Menards, including the front entrance and threshold. The threshold at the Moline Menards is a metal strip that runs the length of the doorway under the path of sliding entry doors.

Upon arriving, Leonhardt entered the store to retrieve a blue flat cart (a "blue cart") to transport the particleboard into the store. He wheeled the cart to his son's truck, parked near the door, without issue. After loading the particleboard onto the cart, Leonhardt began pushing the now heavy cart towards the store entrance. As he attempted to push the cart through the doorway, the cart caught on the threshold, tipped forward, and the particleboard began sliding off. The cart then propelled backward and knocked Leonhardt to the ground. Three Menards employees responded to the scene, reloading the boards onto the same cart and pushing the cart over the threshold and into the store without incident.

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nomovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are, unless otherwise noted, taken from Menards's statement of undisputed material facts, Mot. Summ. J. 2–6; Leonhardt's response thereto and statement of additional material facts, Resp. Mot. Summ. J. 1–7, ECF No. 27; Menards's reply to Leonhardt's additional material facts, Reply Supp. Mot. Summ. J. 1–5, ECF No. 31; and the exhibits to the filings. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to Leonhardt and draws all reasonable inferences in his favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Menards suggests that the Court should deem its statement of facts admitted for the purposes of summary judgment because Leonhardt did not properly respond under Civil Local Rule 7.1(D)(2)(b). Reply Supp. Mot. Summ. J. 5–6. The Court does not find it necessary to do so because, despite its improper form, Leonhardt's response establishes clearly enough the points at which he disputes Menards's account.

Two of the Menards employees who responded to the incident were First Assistant General Manager Jim Smashey, and Assistant Front-End Manager Regan Johnston.  Smashey had worked at the Moline Menards for two-and-a-half years, and Johnston had also worked at the store for at least two years.  As the general manager on duty, Smashey would have been responsible for inspecting the entrance doorway on the morning of September 15, 2021.  After the incident, Smashey did not observe any issues with the threshold, and Leonhardt did not examine the threshold.  Neither Smashey nor Johnston were aware of any similar prior incidents at the store, but a Menards employee spoke with Leonhardt after the incident and told him "that's why we don't use these carts to move material like that."  Leonhardt Dep. 78:22–79:9, Mot. Summ. J. Ex. 1, ECF No. 20-1.  A Menards employee also told Leonhardt's son that they had other carts designed to prevent material like particleboard from sliding off.  According to Smashey, Menards has several types of carts, including rail carts, some of which are more appropriate for returning particleboard.  However, Menards does not provide guidance to either customers or employees on which cart to use for any given task.

On December 9, 2024, Leonhardt filed a complaint in Illinois state court alleging that Menards negligently placed and maintained the metal threshold in a manner that it knew or should have known posed an unreasonable risk of harm to store patrons.  Compl. 1, 3–4, Not. Removal Ex. 1, ECF No. 1-1.  The Complaint also alleges that Menards failed to provide a safe means of entry to the store, failed to provide, inspect, and maintain carts in a manner that would make them safe to pass over the threshold, and failed to warn customers of the dangers associated with using the carts to pass over the threshold while returning goods.  *Id.* at 4.  On January 13, 2025, Menards removed the case to federal court.  *See generally* Not. Removal, ECF No. 1.

After conducting discovery, Menards moved for summary judgment. *See generally* Mot. Summ. J. It seeks summary judgment for three reasons: "(1) Plaintiff cannot establish the existence of a condition presenting an unreasonable risk of harm; (2) Plaintiff cannot establish that Defendant had actual or constructive notice of a condition presenting an unreasonable risk of harm; and (3) Plaintiff's claim is time barred by the Illinois construction statute of repose." Mot. Summ. J. 6.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the court determines whether a trial is necessary due to the existence of any genuine factual issues that could be reasonably resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). At summary judgment, the court must "construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). But it need not turn a blind eye to necessary factual conclusions drawn from the evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)). Summary judgment must be granted unless "a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir. 1999) (quotation marks omitted).

The movant bears the initial burden of production to "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing "that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quotation marks omitted). The burden then shifts to the nonmovant to present evidence of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. To prove that a fact is or cannot be genuinely disputed, a party must "cit[e] to particular parts of materials in the record" or "show[] . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## II.    Analysis

Menards argues that summary judgment is appropriate both because Leonhardt cannot satisfy the essential elements of a premises liability claim and because his claim is barred by the Illinois construction statute of repose. Mot. Summ. J. 6. Before proceeding to the merits of Leonhardt's claim, the Court first addresses whether it is barred by the statute of repose.

### a.    Illinois Construction Statute of Repose

The Illinois construction statute of repose reads in relevant part:

> No action based upon tort, contract or otherwise may be brought against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property after 10 years have elapsed from the time of such act or omission.

735 ILCS 5/13-214(b). "This statute applies whenever (1) the product at issue is an improvement to real property and (2) the defendant's activities fall within those listed in the statute." *Ryan v. Commonwealth Edison Co.*, 885 N.E.2d 544, 548 (Ill. App. Ct. 2008). Menards argues that Leonhardt's claim expired in November 2011 because he seeks recovery for negligent design of the threshold, which is an improvement to real property that was designed

and planned in November 2001.  Mot. Summ. J. 15.  Leonhardt responds that the statute of repose does not bar his claim because it arises out of Menards's use and maintenance of the building, not its involvement in the store's construction or design.  Resp. Mot. Summ. J. 17–20, ECF No. 27.  He does not contest that the threshold is an improvement to real property within the meaning of the statute.  *See id.*

For the statute of repose to apply, Menards's activities must fall within those listed in the statute.  *Ryan*, 885 N.E.2d at 548.  Those activities include only "the design, planning, supervision, observation or management of construction, or construction of an improvement to real property."  735 ILCS 5/13-214(b).  Illinois courts have recognized that the statute of repose "protect[s] activity rather than status."  *Ryan*, 885 N.E.2d at 550.  That is, for a defendant to be protected by the statute, it is not enough for the defendant to have participated in the construction; "liability must rest on construction-related activity."  *Travelers Cas. & Sur. Co. v. Bowman*, 893 N.E.2d 583, 589 (Ill. 2008); *see also Stanley v. Ameren Ill. Co.*, 982 F. Supp. 2d 844, 861 (N.D. Ill. 2013) ("[A]cts unrelated to the initial construction of the improvement . . . are not protected." (citing *MBA Enters., Inc. v. N. Ill. Gas Co.*, 717 N.E.2d 849, 852 (Ill. App. Ct. 1999)).  For example, "if an installer of an improvement to real property violates a duty arising from its activity as an inspector, rather than its activity as an installer, then it can be held liable for breach of that duty regardless of the statute of repose."  *Ryan*, 885 N.E.2d at 552.

Leonhardt's claim does not arise out of the construction of the threshold.  Instead, "[t]he hazard alleged here arises from the combination of the entrance threshold and Menards'[s] operational use of heavy carts by customers, not merely from the original design of the building decades earlier."  Resp. Mot. Summ. J. 19.  As such, the negligent act or omission underlying Leonhardt's premises liability claim is not necessarily the negligent construction or design of the

6

threshold—based on Leonhardt's claim, the unreasonable risk of harm may also have been avoided through an adequate warning or through the use of different carts.  His injury was, of course, caused in part by the nature of the threshold, but his claim does not regard the improper *construction* of the threshold, but the improper *operation* of the store given the threshold's design.  Because the statute of repose "bars only those claims regarding the construction of an improvement to real property," *MBA Enters., Inc.*, 717 N.E.2d at 852, it does not affect Leonhardt's claim.

### b.  Premises Liability

#### i.  Legal Framework

To prevail in a premises liability action, a plaintiff must prove six things:

> (1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff.

*Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017) (citing *Jordan v. Nat'l Steel Corp.*, 701 N.E.2d 1092, 1094 (Ill. 1998); *Mueller v. Phar-Mor, Inc.*, 784 N.E.2d 226, 231 (Ill. App. Ct. 2000)).  Menards contends that summary judgment is appropriate because there is no evidence that the first or second elements are satisfied.  Mot. Summ. J. 7–11.

Under Illinois law, the relationship between ordinary negligence and premises liability claims is somewhat undefined.  Premises liability emerged from and "is a subset of common-law negligence."  *Reyes v. Menard, Inc.*, No. 21 CV 359, 2022 WL 2757666, at *2 (N.D. Ill. July 14, 2022); *see also* Restatement (Second) of Torts ch. 13 (A.L.I. 1965) (nesting "liability for condition and use of land" under the general topic of "negligence")

In the premises liability context, the Illinois Supreme Court has relied extensively on the Restatement (Second) of Torts. *See, e.g.*, *Genaust v. Ill. Power Co.*, 343 N.E.2d 465, 472 (Ill. 1976); *Ward v. K Mart Corp.*, 554 N.E.2d 223, 229 (Ill. 1990); *Deibert v. Bauer Bros. Constr. Co.*, 566 N.E.2d 239, 241 (Ill. 1990). Section 343 of the Restatement ("Dangerous Conditions Known to or Discoverable by Possessor") articulates a three-part test for liability:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land, but only if, he
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* § 343. In this section, the Restatement reflects a traditional common law distinction between invitees, licensees, and trespassers. *See id.* ch. 13 topic 1 (outlining distinct rules for liability to different classes of entrants). The Illinois legislature abolished this common law distinction by statute, so the duty owed to all entrants is now that of "reasonable care under the circumstances." 740 ILCS 130/2. Accordingly, Illinois courts incorporate the principles from section 343 of the Restatement into a general consideration of whether a landowner's duty of reasonable care extends to the circumstances at issue. *See Ward*, 554 N.E.2d at 229 (applying section 343 to a consideration of "whether [the] defendant's general duty of reasonable care extended to the risk encountered by [the] plaintiff"). These principles from the Restatement help courts analyze the four considerations that guide all duty analyses: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014); *see also Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012); *Forsyth v. Clark USA, Inc.*, 864 N.E.2d 227, 232 (Ill. 2007).

Relevant to this duty consideration is the question of whether a property condition can be considered "open and obvious." *See Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832–36 (Ill. 1996). As a general matter under this "open and obvious exception" to liability, "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious." *Rexroad v. City of Springfield*, 796 N.E.2d 1040, 1046 (Ill. 2003). As applied to the duty framework, if a potentially dangerous condition is open and obvious, then "[t]he likelihood and foreseeability of an injury are considered slight, negating a duty to protect." *Van Gelderen v. Hokin*, 958 N.E.2d 1029, 1037 (Ill. App. Ct. 2011); *Bruns*, 21 N.E.3d at 690. Once again, Illinois courts look to the Restatement when considering how to apply this doctrine. *See Deibert*, 566 N.E.2d at 242 (applying section 343A and the comments thereto). The Restatement provides: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1) (A.L.I. 1965).

Because premises liability cases raise distinct issues with respect to whether a duty exists, some courts, using language from the Restatement, began articulating a unique premises liability test. From this line emerged *Jordan*, 701 N.E.2d at 1094, *Parker*, 845 F.3d at 811, and the six premises liability factors outlined *supra*. The Illinois pattern jury instructions for premises liability claims reflect the same six-factor test. Ill. Pattern Jury Instr. Civ. 120.08. However, many courts, including the Illinois Supreme Court, continue evaluating premises liability claims using the general negligence framework. *See, e.g.*, *Rusch v. Leonard*, 927 N.E.2d 316, 321 (Ill. App. Ct. 2010) ("To prevail on a claim for premises liability, a plaintiff must allege and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury

proximately caused by that breach of duty."); *Bruns*, 21 N.E.3d at 688–95 (considering a traditional negligence action based on injury caused by an uneven sidewalk). The two frameworks appear to be different ways of asking the same threshold question: does a condition present such a risk of harm that the property possessor should be required to protect visitors against it?

To the Court's knowledge, Illinois courts have not provided a neat explanation of how the open and obvious exception fits into a six-element premises liability analysis. However, it is likely appropriate to consider the principles of the open and obvious exception with respect to each of the first three elements: the existence of a dangerous condition, the defendant's knowledge of the risk posed by that condition, and the defendant's anticipation that individuals on the premises would fail to protect themselves against the risk. This is the case for several reasons. First, the Restatement's description of the open and obvious exception uses language reflecting each of these three elements. *See* Restatement (Second) of Torts § 343A(1) ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."). Second, the likelihood and reasonable foreseeability of the injury—the duty considerations impacted by the open and obvious exception in the basic negligence context—significantly overlap with these three elements of a premises liability claim. And third, as discussed, these three elements are essentially an elaboration of the basic duty test and, by consequence, the issues relevant to a duty analysis will also be relevant to their resolution.

In many cases, courts decide to use either the negligence or premises liability framework as a consequence of how the parties present the case. *See, e.g.*, *Deibert*, 566 N.E.2d at 240

("Plaintiff . . . brought a negligence suit[.]"); *Bruns*, 21 N.E.3d at 687 ("Plaintiff . . . filed a negligence action[.]").  Because the two frameworks answer the same basic question of whether a landowner is responsible for protecting entrants against a condition on the property, the Court finds it appropriate to use whichever framework best addresses the arguments raised by the parties.  Although both parties adopt the six-element premises liability test and frame their arguments using that language, *see* Mot. Summ. J. 7; Resp. Mot. Summ. J. 10, they also both cite cases decided using a "duty" analysis and dispute the proper application of the open and obvious exception.  *See, e.g.*, Resp. Mot. Summ. J. 11–13 (arguing that the open and obvious exception should not bar liability and relying on various cases applying the standard negligence framework); Reply Supp. Mot. Summ. J. 7, ECF No. 31 (citing *Piotrowski v. Menard, Inc.*, 842 F.3d 1035 (7th Cir. 2016), which applied a standard negligence framework).  And since Menards disputes several of the duty-related premises liability prongs, the Court finds that it essentially presents cross-cutting arguments that go to the issue of whether it had a duty to Leonhardt under the circumstances.  Further, Leonhardt's complaint plainly utilizes the language of negligence to make his claims.  *See* Compl. 3–4 (seeking compensation for injuries caused by "negligent acts or omissions" by Menards).  Because it allows for a more wholistic assessment of the parties' arguments and a clearer application of the open and obvious exception, the Court elects to proceed under a traditional negligence framework, beginning with a duty analysis.  Where appropriate, the Court will still consider cases decided under the six-prong premises liability test.

### ii.  Duty

In Illinois, a landowner does not have a duty to an individual entering its property unless the "defendant and plaintiff stood in such a relationship to one another that the law imposed upon [the] defendant an obligation of reasonable conduct for the benefit of [the] plaintiff."  *Ward*, 554

11

N.E.2d at 226.  Courts evaluate four factors in determining whether a duty exists: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns*, 21 N.E.3d at 689.  The Restatement articulates specific considerations in cases such as this: whether the landowner "(a) [k]nows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) [s]hould expect that they will not discover or realize the danger, or will fail to protect themselves against it . . . ."  Restatement (Second) of Torts § 343 (A.L.I. 1965).  The open and obvious exception is also relevant, *see id.* § 343A(1); *Ward*, 554 N.E.2d at 229; *Bruns*, 21 N.E.3d at 689–90, and impacts the Court's assessment of the foreseeability and likelihood of the injury, *Van Gelderen*, 958 N.E.2d at 1037; *Bruns*, 21 N.E.3d at 690.

Generally, under the open and obvious exception, "a party who owns or controls land is not required to foresee and protect against an injury if the potentially dangerous condition is open and obvious."[2]  *Rexroad*, 796 N.E.2d at 1046.  Whether a condition is open and obvious is determined objectively—what matters is whether a visitor "exercising ordinary perception, intelligence, and judgment" would recognize both the condition and its risk.  *Bruns*, 21 N.E.3d at 690 (quotation marks omitted).  Leonhardt contends that "[a] reasonable jury could conclude that

---

[2] There are exceptions to the open and obvious exception—such as the "distraction exception" and the "deliberate encounter exception," *Bruns*, 21 N.E.3d at 691—that are not relevant here.  Neither party mentions the deliberate encounter exception.  *See generally* Mot. Summ. J.; Resp. Mot. Summ. J.; Reply Supp. Mot. Summ. J.  And insofar as Leonhardt argues that the distraction exception applies, *see* Resp. Mot. Summ. J. 16–17, the Court does not find his reasoning persuasive.  While *Ward* holds that the distraction exception could apply when customers are carrying goods that would distract them from an otherwise obvious condition, it did so in the context of a customer who forgot that a pole was located immediately in front of the exit door.  *Ward*, 554 N.E.2d at 233.  Given the nature and layout of the store and exit area, the court held that "[i]t was . . . reasonably foreseeable that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting through the door."  *Id.*  It stretches credibility to argue that a customer crossing a doorway would forget about the existence of a threshold—an element of nearly every doorway.  Indeed, in this case, Leonhardt makes no argument that he forgot the threshold existed, nor even that he forgot about the danger it posed.  *See* Resp. Mot. Summ. J. 16–17.  In short, neither the facts of the case nor the parties' arguments suggest that the distraction exception applies here.

while the threshold was physically visible, its tendency to stop a loaded cart and cause a dangerous shift of materials was not readily apparent to customers using the entrance in the ordinary manner intended by Menards." Resp. Mot. Summ. J. 12.

The Court disagrees; in this case, the risk was open and obvious. It is common knowledge that cart wheels can get stuck on uneven surfaces, especially when the cart is heavy. Metal thresholds, like cracks in the pavement or stones on the ground, create an uneven surface. Further, two smooth materials placed together, like the particleboard resting on top of the blue cart, *see* Security Footage 0:56–1:10, Mot. Summ. J. Ex. 7, ECF No. 21, generate very little friction and will slide easily. Each of these principles is known to a reasonable person, and a visitor exercising ordinary care would appreciate the risk these principles present when combined. These realities do, of course, pose a real risk for those pushing carts laden with heavy, smooth material over a metal threshold. Unfortunately, in this case, that risk was realized. However, the fact that the risk existed does not mean it was not readily apparent to a visitor exercising ordinary judgment.

This case is similar to others in which courts found that a danger was open and obvious. In *Bruns* the court affirmed a grant of summary judgment for the defendant because an uneven sidewalk presented an open and obvious risk. *Bruns*, 21 N.E.3d at 694–95. The Illinois Supreme Court has also found that a tire rut in front of a bathroom, *see Deibert* 566 N.E.2d at 243, and a concrete post outside a store's entrance, *Ward*, 554 N.E.2d at 232, were open and obvious. Like the conditions in each of those cases, the threshold was not "concealed or hidden in any way." *Deibert*, 566 N.E.2d at 243. And as discussed above, like the risk of running into a concrete post or tripping over a cracked sidewalk, the risk of a heavy cart being obstructed by a threshold is obvious. Leonhardt argues that the risk posed by the threshold was not open and

obvious because the threat of tripping or obstruction was greater when the materials on the cart were heavy.  *See* Resp. Mot. Summ. J.  11–13.  However, the fact that the risk of obstruction might be minor in some circumstances and more substantial in others does not mean the risk posed by the threshold was not open and obvious.  Notably, the conditions assessed by the Illinois Supreme Court in *Bruns*, *Deibert*, and *Bruns* also presented risks that were more grave in certain conditions—a crack in a sidewalk, for example, would pose a greater risk to an individual who shuffled because of a past leg injury; a concrete post at a store entrance would pose a greater risk to an individual carrying bulky merchandise.  Similarly, the threshold at Menards may have presented a risk that was particularly acute when traversed with a heavy cart.  However, the fact that the gravity of the risk posed by the threshold was not identical in all circumstances does not affect the conclusion that the risk was open and obvious.

This conclusion is reinforced by cases finding that a condition did not pose an "unreasonable risk of harm" under the six-factor premises liability framework.  Under this element, "[a] plaintiff must prove more than a risk of harm existed; the risk must have been unreasonable."  *Grossman v. Menard, Inc.*, No. 17 C 2242, 2018 WL 4563071, at *2 (N.D. Ill. Sept. 24, 2018) (citing *Van Gelderen*, 958 N.E.2d at 1035).  A risk is generally unreasonable if it is "hidden, unusual, or not to be expected."  *Id.* (quoting *Horcher v. Guerin*, 236 N.E.2d 576, 579 (Ill. App. Ct. 1956)).  Applying this test, courts have held that unobstructed stairs with nothing "extraordinary" about them did not present an unreasonable risk of harm, *see Alcorn v. Stepzinski*, 540 N.E.2d 823, 826 (Ill. App. Ct. 1989); *Glass v. Morgan Guar. Tr. Co.*, 606 N.E.2d 384, 386–87 (Ill. App. Ct. 1992), and that a 1-inch deep crack in parking lot did not present an unreasonable risk of harm because there was nothing hidden, unusual, or unexpected about it, *see Grossman*, 2018 WL 4563071, at *2.  On the contrary, conditions present an "unreasonable"

14

risk of harm if they are hidden or if there is something preventing the plaintiff from avoiding the danger they present. *See, e.g.*, *Van Gelderen*, 958 N.E.2d at 1036 (concluding that evidence supported a jury finding that a staircase presented an unreasonable risk of harm because an expert testified that it was positioned so near a doorway that there was "not enough room to protect from injury people . . . who step to the right when leaving through . . .[the] door"). In this case, there is no reason to believe that Menards's threshold was "extraordinary" in any way or that there was anything hidden, unusual, or unexpected about it. Nor does Leonhardt articulate a reason he was prevented from avoiding the risk posed by the threshold.

Leonhardt offers no expert testimony to support his claim that the threshold was unusual or that it had a hidden, unusual, or unexpected character. Expert testimony is not necessary to establish the existence of a duty, but it can provide critical evidence of the unreasonableness of a risk. *Compare Van Gelderen*, 958 N.E.2d at 1036 (finding a triable issue of fact on the basis of expert testimony that the location of a stairwell created an unreasonably dangerous condition), *with Grossman*, 2018 WL 4563071, at *2 (finding lack of expert testimony relevant in granting summary judgment to defendant), *and Glass*, 606 N.E.2d at 386 (same). Expert testimony would be especially helpful in this case because Leonhardt brings a relatively specific claim in the premises liability context: that a dangerous condition is created when a heavy load is placed onto an otherwise safe cart and pushed over an otherwise safe threshold.[3]

Because the risk in this case was open and obvious, the likelihood and foreseeability of Leonhardt's injury was low. *See Bruns*, 21 N.E.3d at 690. Leonhardt presents scant evidence to the contrary. He testifies to the facts of his accident, but the facts of this case alone cannot

---

[3] Leonhardt does not argue that pushing a blue cart over the threshold poses any risk at all unless the cart is weighed down with heavy merchandise. *See* Resp. Mot. Summ. J. 10 (stating that a jury could find the threshold poses a dangerous condition "to customers pushing *loaded* carts" (emphasis added)); *id.* at 11 (describing Leonhardt's testimony that "he had no difficulty pushing the car through the doorway when the cart was empty").

establish the objective likelihood and foreseeability of the incident—if that were so, the inquiry would be entirely superfluous since every premises liability case is brought in response to a specific incident. The only other evidence he identifies is a statement by a Menards employee that "[t]hat's why we don't use these [blue] carts to move material like that." Leonhardt Dep. 79:7–9. While this statement tends to show that the Menards employees were aware of some risk and had alternative ways to transport similar heavy supplies, the fact that this practice developed without formal training or instruction, *see* Smashey Dep. 32:19–33:8, Mot. Summ. J. Ex. 6, ECF No. 20-6, suggests that the risk was not hidden, unusual, or unexpected. Leonhardt provides no evidence that the threshold in this case, *see* Threshold Photo, Mot. Summ. J. Ex. 8, ECF No. 20-7, poses any type of risk inconsistent with those presented by thresholds found in other commercial buildings. There is no evidence that the threshold was damaged or otherwise not functioning properly. There is similarly no evidence that an unreasonable risk is created when a blue cart is pushed over the threshold: Leonhardt concedes that the blue cart was not defective, *see* Resp. Mot. Summ. J. 4, and there is no evidence that it is unusual to cross the threshold with blue carts, or that the blue cart Leonhardt used differed relevantly in character from other carts used regularly at this store or others. He also presents no direct evidence of past similar occurrences.[4] *See generally* Resp. Mot. Summ. J.; *see Trimble v. Olympic Tavern, Inc.*, 606

---

[4] Leonhardt argues that the employee's statement, "[t]hat's why we don't use these carts to move material like that," Leonhardt Dep. 79:7–9, is an indication that similar incidents had happened in the past. Resp. Mot. Summ. J. 7–8. Even drawing all reasonable inferences in Leonhardt's favor, the employee's statement does not show that there were past similar occurrences. A plaintiff's burden is not merely to show that the evidence is *consistent* with his proffered theory, but to present evidence to support his case. *See Celotex Corp.*, 477 U.S. at 324. In this case, there is simply a lack of evidence that would allow a finding of similar accidents at the Moline Menards. Even assuming the employee was discussing the specific risk of rolling a heavy blue cart over the threshold, there is no evidence that the employee's knowledge of the risk was based on observation instead of intuition. Further, there is no evidence that the employee even had the threshold in mind—he could have been addressing only the propensity of the particleboard to slide when placed on the blue cart. As such, crediting Leonhardt's testimony and drawing all reasonable inferences from it, there is still not enough evidence to support a finding that there had been past similar occurrences at the Moline Menards. Even were Leonhardt's testimony sufficient to show similar accidents in the past, it would be insufficient to overcome the otherwise utter lack of evidence showing that his accident was likely or foreseeable.

16

N.E.2d 1276, 1279 (Ill. App. Ct. 1993) ("[S]imilar accidents are relevant to show the existence of a particular danger.").

In sum, because the risk posed by the threshold was open and obvious, and because the threshold and cart did not present a risk that was hidden, unusual, or unexpected, the Court finds that the first two factors of the duty analysis favor Menards.  Though the parties do not address the third and fourth factors—the burden of guarding against the injury and the consequences of placing that burden on the defendant, *Bruns*, 21 N.E.3d at 689—these factors similarly do not favor imposing a duty on Menards.  Posting a warning would presumably entail little cost, but the Court notes that a warning alone would likely have little effect since the risk is already open and obvious.  *Cf. Sollami v. Eaton*, 772 N.E.2d 215, 225 (Ill. 2002) (finding that burdens such as providing warnings "are unjustified, given the open and obvious nature of the risk involved in this case").  Other precautions, such as replacing the threshold or redesigning the entrance, would involve greater cost and would be similarly unjustified given the open and obvious nature of the hazard.  *See Hillsamer v. Walmart, Inc.*, No. 20 C 6753, 2022 WL 4079451, at *4 (N.D. Ill. Sept. 6, 2022) ("Establishing a duty for Walmart to guard against all conceivable customer injuries from obvious [hazards] at all times would impose too great a burden in such circumstances.").  The consequences of placing the burden on Menards could also be significant given the number of Menards stores across the country.  *Cf. Bruns*, 21 N.E.3d at 695 (finding that the consequence of placing the burden of guarding against a cracked sidewalk on the city may be significant because "[t]he City has miles of sidewalk to maintain").  On the whole, the Court holds that under the circumstances, Menards did not have a duty to guard against the particular injury suffered by Leonhardt.

17

Since Menards did not have a duty to protect Leonhardt against the open and obvious risk presented by the threshold, Menards is entitled to judgment as a matter of law.

## CONCLUSION

Accordingly, Defendant Menard Inc. d/b/a Menards Store No. 3285's motion for summary judgment, ECF No. 20, is GRANTED.  Because this order does not rely on Exhibit 9 to Menards's motion, Leonhardt's motion to strike, ECF No. 28, is MOOT.  The Clerk is directed to enter judgment and close the case.

Entered this 24th day of April, 2026.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE